IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK T. CARLSON,

                              OPINION AND ORDER

           Plaintiff,

                              20-cv-871-bbc

    v.

KILOLO KIJAKAZI[1],
Acting Commissioner of Social Security,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Mark Carlson appeals a decision of the Acting Commissioner of Social Security denying his application for disability insurance benefits under the Social Security Act. He contends that the administrative law judge (ALJ) who denied his application erred by: (1) disregarding his subjective complaints of fatigue and handling and fingering limitations; (2) failing to properly consider the opinions of plaintiff's treating physician, Dr. Michael Mahan, regarding plaintiff's multiple sclerosis (MS) and fatigue; and (3) failing to inquire of the vocational expert how she arrived at her nationwide job number estimates. For the reasons set out below, I conclude that any error the ALJ may have committed with respect to the vocational expert's testimony was harmless and does not warrant remand, but I agree that the ALJ's assessment of plaintiff's hand limitations and fatigue were not

---

[1]The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

1

supported by substantial evidence and am remanding this case for further proceedings on those grounds only.

BACKGROUND

Plaintiff Mark Carlson applied for disability insurance benefits under the Social Security Act on February 1, 2018, when he was 38. He alleged that he had been disabled since August 30, 2016 because of MS. Dkt. #14, Administrative Record (AR) 32, 38, 42. Plaintiff submitted medical records showing that he had been given a diagnosis of MS in September 2016 and that his symptoms had first appeared about 10 years before then. He receives a weekly injection of Avonex to slow the worsening of his MS symptoms, Baclofen for muscle spasms, and Fluoxetine (Prozac) and Amantadine for fatigue. AR 60-61, 279, 454.

On January 17, 2018, plaintiff underwent 171 minutes of neuropsychological testing on the recommendation of his neurologist, Dr. Mary Goodsett, who was concerned that he might be experiencing cognitive decline. AR 278. The neuropsychologist who performed the testing found that plaintiff had memory loss and mild memory disturbances not amounting to dementia and recommended a more comprehensive evaluation. AR 280. Follow-up testing performed in February 2018 showed only isolated difficulties with memory and new learning that should not affect plaintiff's daily functioning. AR 443.

On March 20, 2018, plaintiff's primary care physician, Dr. Michael Mahan, said that plaintiff was not employable because MS was unpredictable and plaintiff was able to commit

to only an hour and a half of work on any given day before his muscles cramp and he is forced to lie down.  AR 453-54.  The doctor also noted that plaintiff had reported that merely doing his laundry wore him out and his finger and hand cramping prevented him from holding playing cards for more than a few rounds, using a controller to play video games, or performing tasks needed for cooking.  AR 454.  (Plaintiff previously worked as a cook for many years but can no longer withstand the rigors of an eight-hour work day.  Id.)

On February 11, 2019, Dr. Mahan wrote that plaintiff was stable but his MS was significantly affecting his life.  According to Dr. Mahan, plaintiff was no longer able to work in the restaurant industry because of fatigue and bilateral hand pain.  He assessed plaintiff as having pain/numbness in his arms, peripheral neuropathy, and generalized anxiety disorder.  Plaintiff had been called for jury duty, but, in Dr. Mahan's opinion, plaintiff would not have the stamina to serve as a juror.  AR 513-14, 518-19.

After the local disability agency denied plaintiff's claim initially and on reconsideration, he requested an administrative hearing, which was held on April 29, 2019 before ALJ Karen Sayon.  Plaintiff appeared and testified at the hearing without the assistance of an attorney.  AR 32.  He said that he experiences muscle spasms if he exerts himself, has cramping in his hands when he holds anything and has extreme fatigue that usually requires him to nap for four hours during the day.  AR 62-63, 65-66.

On September 12, 2019, the ALJ issued a decision finding plaintiff not disabled under the five-step inquiry for evaluating disability claims, 20 C.F.R. § 404.1520.  At steps one through four, the ALJ found that plaintiff had the severe impairments of MS and obesity.

AR 35. She then determined that none of plaintiff's impairments met or medically equaled a listed impairment, AR 37, and that plaintiff had the residual functional capacity to perform light work with additional non-exertional limitations. AR 38. The ALJ did not impose any handling or fingering limitations.

The ALJ concluded that plaintiff was not disabled because he could perform his past relevant work as a food service manager and or facility manager. AR 41. In the alternative, the ALJ determined at step five of the evaluation process that plaintiff also could perform jobs that existed in significant numbers in the national economy, including packer, information clerk, and assembler. AR 42-43.

The Appeals Council subsequently denied plaintiff's request for review, making the ALJ's decision the final decision of the acting commissioner.


OPINION

The case is now before this court to determine whether the ALJ's decision is supported by substantial evidence, that is, "sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014). In

4

reviewing an ALJ's decision, the court applies a common-sense reading and considers the opinion as a whole.  Winsted v. Berryhill, 923 F.3d 472, 478 (7th Cir. 2019).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to:  (1) adequately account for plaintiff's subjective complaints of fatigue and handling and fingering limitations; (2) give full consideration and proper weight to Dr. Mahan's opinions regarding plaintiff's fatigue and hand problems; and (3) inquire about how the vocational expert arrived at nationwide job number estimates before relying on the expert's testimony at step five.

Plaintiff's third argument is a non-starter.  At step four of the sequential evaluation process, the ALJ relied on the vocational expert's testimony regarding plaintiff's past work and determined that plaintiff was not disabled because he could perform his past relevant work in food service.  20 C.F.R. § 404.1520(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.").  As the acting commissioner points out, the ALJ did not need to proceed to step five.  Gebauer v. Saul, 801 Fed. Appx. 404, 411 (7th Cir. 2020) ("[A]n ALJ reaches [step five] only if the ALJ first concludes in step four that a claimant could not perform any of her past jobs.") (citing 20 C.F.R. 404.1520(g)(1)).  Therefore, even if the ALJ committed any error at step five in not inquiring about the methodology the vocational expert used to estimate nationwide job numbers, the error is harmless and does not warrant remand.  Id.  Plaintiff has not challenged either the ALJ's step four finding or the acting commissioner's assertion that the

ALJ did not commit reversible error because she was not required to proceed to step five. Accordingly, remand is not required on this ground.

However, plaintiff's two remaining arguments are persuasive. He contends that the ALJ's analysis of his subjective symptoms and Dr. Mahan's opinions showed a misunderstanding of the unique and progressive nature of MS. In particular, plaintiff contends that the ALJ ignored his repeated reports of muscle spasms and cramping in his fingers and hands, his lack of hand dexterity and strength, his disabling fatigue, and the overall work restriction that Dr. Mahan assessed for him in reliance on those reported symptoms.

The medical records show that plaintiff consistently reported pain, severe cramping in his hands, and overwhelming fatigue. E.g., AR 348 (April 19, 2017 report that plaintiff's hands will cramp into disfigured positions); AR 523 (June 12, 2018 report that writing had become harder for plaintiff because he had problems holding a pen and performing other fine motor skills, and his fatigue was increasing, forcing him to spend more daytime hours in bed); AR 519 (October 10, 2018 report that plaintiff could not get out of bed for 12 to 16 hours and a mere 15 minutes of light gardening left him fatigued); and AR 514-15 (February 2019 reports that fatigue and hand pain prevent him from finishing dishes for three people, doing any extensive cooking, or performing any daily activities without significant breaks).

Dr. Mahan concluded that plaintiff's symptoms were consistent with multiple sclerosis: plaintiff had significant bilateral hand pain; his fatigue had gotten worse even

though his underlying anxiety had improved on antidepressant medication; and these symptoms interfered significantly with his daily life. AR 513, 515, 523.

An ALJ's findings about a claimant's testimony regarding symptoms are entitled to great deference and should be upheld unless patently wrong. Summers v. Berryhill, 864 F.3d 523, 528 (7th Cir. 2017). However, an ALJ must give reasons sufficient to provide a fair sense of how the ALJ assessed a claimant's testimony and statements. Social Security Ruling 16-3p. In addition, under the rules applicable to plaintiff's claim, an ALJ is required to consider the persuasiveness of each medical opinion—regardless of its source—focusing on supportability and consistency. Winsted, 923 F.3d at 478; 20 C.F.R. § 404.1520c(a). The ALJ has not met these standards in this case.

First, the ALJ did not explain why she was rejecting the reports about plaintiff's fatigue and hand pain beyond stating that plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical record and other evidence. AR 38-39. The ALJ pointed to no medical evidence that contradicted plaintiff's reports. Instead, she cited medical reports showing that plaintiff had had a series of MRIs that revealed that his multiple sclerosis was stable; he had no severe side effects from Avonex, which seemed to have slowed the progression of his MS; and he stopped occupational therapy in April 2018, after learning about what kitchen and self-care adaptive equipment could do to help manage his symptoms. AR 39-40 (citing AR 504-05). Similarly, the ALJ found Dr. Mahan's opinions inconsistent with the record, including neuropsychological testing and physical exams that showed few deficits, plaintiff's overall

stable condition with only conservative treatment (Avonex) and his request to no longer participate in several forms of alternative treatment, including occupational therapy. However, none of those reports contradict plaintiff's specific complaints of worsening fatigue and hand and fingering problems.

Although the acting commissioner points out that the ALJ noted that plaintiff had a normal range of motion in his upper extremities, normal arm strength, and normal grip and pinch strength in his hands on various occasions (including as late as April 2018), AR 39-40 (citing AR 282, 287, 503-04, 524), the ALJ did not explain how those test results relate to plaintiff's reports that he could not hold or manipulate even light objects for any length of time. At the hearing, plaintiff testified that even though he could initially grip an object with full strength, his hand would cramp and lock up in pain if he tried to hold onto the object for any length of time. He also explained that he had very limited dexterity for any task requiring fine motor skills, such as fixing circuitry, putting on socks, or cutting vegetables. AR 62-63. The ALJ mentioned that plaintiff took a medication to treat muscle spasms, but she did not explain what effect the medication had on either his hand and finger dexterity or his hand cramping, and she did not point to any evidence in the record to support a conclusion that the medication was effective in treating plaintiff's hand issues. (Plaintiff testified that Baclofen helped increase the length of time he could do something before his hands locked up and eased the rigidity of his hands when they did lock up, but he made it clear that he was unable to hold or manipulate objects for the time necessary for most tasks or activities. AR 62.)

The ALJ should have addressed the question whether plaintiff would need any handling and fingering restrictions because of the problems with his hands. Because she failed to properly address plaintiff's complaints as well as Dr. Mahan's statements and the medical records regarding his handling and fingering problems, her decision cannot be found to be supported by substantive evidence.

With respect to fatigue, the ALJ noted that Dr. Goodsett had documented in July 2017 and in January and July 2018 that plaintiff's fatigue was stable and manageable after his MS had flared up. AR 39, 41 (citing AR 281, 285, 473). Although the ALJ concedes that plaintiff later reported excessive fatigue to Dr. Mahan in 2018 and 2019, AR 40-41, she dismissed these reports and Dr. Mahan's opinions based on them on the sole ground that plaintiff was able to complete and successfully perform 171 minutes of neuropsychological testing without any problem in February 2018. AR 41. The ALJ reached this conclusion despite the fact that the testing predated his 2018 and 2019 complaints of severe fatigue. Moreover, it is not clear that plaintiff's ability to stay alert for almost three hours on one occasion, without more, is substantial evidence that he is capable of full-time work or that he is overstating his symptoms.

The acting commissioner generally argues that the ALJ's RFC assessment is supported by the opinions of state agency reviewing physicians Dr. Mina Khorshidi (March 9, 2018) and Dr. Mila Bacalla (May 23, 2018), both of whom noted plaintiff's "good strength" and improved fatigue and concluded that plaintiff could perform a reduced range of light work with no manipulative restrictions. AR 39 (citing AR 86-87, 97-98). Although the ALJ found

9

these opinions persuasive, her finding is not enough to show that the residual functional capacity assessment is supported by substantial evidence. The state-agency doctors noted plaintiff's reported problems with his hands, but like the ALJ, neither doctor made any specific findings related to those problems. With respect to fatigue, the physicians only noted Dr. Goodsett's earlier clinical notes referring to the fact that plaintiff's fatigue was stable.

In sum, I conclude that the ALJ's decision is not supported by substantial evidence because she failed to adequately acknowledge and discuss plaintiff's fatigue and hand pain and limitations. Accordingly, this case must be remanded to the Social Security Administration for further proceedings.

## ORDER

IT IS ORDERED that the decision denying benefits to plaintiff Mark Carlson is REVERSED, and this case is REMANDED to defendant Kilolo Kijakazi, Acting Commissioner of Social Security, for further proceedings consistent with this opinion.

Entered this 13th day of December, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge